Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

Reg. No. 2,342,158

United States Patent and Trademark Office  Registered Apr. 18, 2000

## SERVICE MARK
PRINCIPAL REGISTER

## GAYLORD

AJANTA CORPORATION (CALIFORNIA CORPORATION)
900 NORTH POINT STREET
SAN FRANCISCO, CA 94109

FOR: RESTAURANT, CATERING AND CARRY-OUT SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 10–2–1972; IN COMMERCE 10–2–1972.

SER. NO. 75–380,369, FILED 10–28–1997.

MELVIN AXILBUND, EXAMINING ATTORNEY

Plaintiff's Exhibit A to Ajanta Complaint---Page 1

mission for full consideration of the oral and written arguments of the parties.

Transfer under 28 U.S.C. § 1404(a) requires that the proposed district be one in which the case could have been brought originally. Venue in this case is determined pursuant to 28 U.S.C. § 1391(b) and (c), which permit suit against a corporation either in the district where it is incorporated, or where licensed to do business, or where it is doing business. Here, Defendant CTS Corporation is an Indiana corporation with its principal place of business in Elkhart, Indiana, in the Northern District of Indiana. Clearly then, the action might have been commenced in that district.

The statutory basis for transfer derives from the common law doctrine of forum non conveniens. In codifying that doctrine, Congress intended as well to broaden a court's discretion in deciding whether to transfer. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). In the instant cases, there are several factors which suggest that this Court should properly exercise that discretion and transfer the case to the Northern District of Indiana.

[1] Defendant's books and records are in Elkhart, which is near to South Bend. Evidence of the validity of the patent would come in large part from testimony of employees of CTS and from documents in its files. Production of these documents for pretrial and trial proceedings would be seriously hampered by maintaining the case in the Central District.

Plaintiff's motion for consolidation by the Multi-district Panel was denied. The Defendant's claim and one of the counterclaims by CTS in the Indiana litigation involve substantially the same issues of infringement and validity; the District Judge to whom that case was originally assigned stayed certain proceedings specifically because the issues were virtually identical. Transfer of the case will thus permit consolidation, and allow the parties to complete discovery more conveniently, without the overlapping that discovery in two similar cases would necessarily entail.

The Court notes as well that trial attorneys for both parties are in Chicago, only 100 miles from South Bend. The relative ease that such proximity provides, and the reduced expense to the parties, are both factors favorable to transfer.

Accordingly,

It is ordered that this action be transferred to the Northern District of Indiana at South Bend pursuant to 28 U.S.C. § 1404(a).

---

**District Court, N. D. California**

Chopra et al. v. Kapur, doing business as Gaylord's Restaurant

C-74-2060   Decided Dec. 18, 1974

### TRADEMARKS
#### 1. Injunction — Trademarks (§40.7)

Preliminary injunction is appropriate under 15 U.S.C. 1125(a) if (1) there is substantial probability of plaintiffs' ultimate success on merits at trial, (2) plaintiffs are being irreparably injured by defendant's action, and (3) balance of equities weighs in plaintiffs' favor.

#### 2. Fraud and misrepresentation (§67.37)
#### Infringement — Tests of (§67.439)

Likelihood of confusion is test of infringement under section 43(a) of Lanham Act; likelihood is judged by (1) area of concurrent sale, (2) extent to which services or products are related, (3) extent to which mark and alleged infringing name are similar, (4) strength or novelty of plaintiffs' mark, (5) evidence of bad faith or intention of defendant in selecting and using alleged infringing name with a view to obtaining some advantage from plaintiffs' good will, and (6) evidence of actual confusion.

### UNFAIR COMPETITION
#### 3. Names — Hotels and restaurants (§68.713)

Although geographical overlap between plaintiffs' and defendant's services is minimal where defendant's restaurant is in San Francisco and plaintiffs' nearest restaurant is in Chicago, geographical proximity is not necessary and defendant is enjoined where clientele of plaintiffs' restaurants is ambulatory and plaintiffs' reputation and good will have extended to San Francisco, especially since plaintiffs began efforts to find a suitable location for San Francisco restaurant before defendant opened his restaurant.

### TRADEMARKS
#### 4. Injunction — Trademarks (§40.7)
#### Territorial limitations (§67.83)

Second user of confusingly similar service mark may be enjoined if there is a reasonable prospect that first user will expand into the area.

#### 5. Evidence — Of confusion (§67.37)

Inference of likelihood of confusion is drawn where defendant was aware of plain-

tiffs' worldwide reputation when it adopted virtually identical name with intention of capitalizing on plaintiffs' good will.

---

Action by Krishan Chopra, Gaylord (India) Restaurant, Inc., and Ghai Lamba Catering Consultants Private Limited against Jag Mohan Kapur, doing business as Gaylord's Restaurant, under section 43(a) of Lanham Act and for unfair competition. Judgment for plaintiffs.

Charles A. Laff, Howard B. Rockman, and Laff, Whitesell & Rockman, all of Chicago, Ill., and Milton W. Schlemmer and Flehr, Hohbach, Test, Albritton & Herbert, both of San Francisco, Calif., for plaintiffs.

John E. Hill, San Francisco, Calif., for defendant.

Weigel, District Judge.

This cause having come before this Court for hearing on November 14, 1974, on Plaintiffs' Motion for a Preliminary Injunction, this Court makes the following Findings of Fact and Conclusions of Law:

1. This is an action for false designation of origin as to Defendant's services and unfair competition. This Court has jurisdiction by virtue of Title 15 U.S.C. §§ 1121 and 1125(a), and Title 28 U.S.C. §§ 1331(a) and 1332(a)(1). Venue lies in this district by virtue of Title 28 U.S.C. § 1391(a) (Verified Complaint, ¶ 1, pp. 1-2).

2. Plaintiff Krishan Chopra (hereinafter Chopra) is a citizen of the State of Illinois residing at 1301 Salford Court, Wheaton, Illinois 60187, and is president of Plaintiff Gaylord (India) Restaurant, Inc. (Verified Complaint, ¶ 2, p. 2; Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 2, p. 1).

3. Plaintiff Gaylord (India) Restaurant, Inc. (hereinafter Chicago Gaylord) is a corporation duly organized and existing under the laws of the State of Illinois, and operates a restaurant business under the mark Gaylord at 678 North Clark Street, Chicago, Illinois 60610 (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 2, pp. 1-2).

4. Plaintiff Ghai Lamba Catering Consultants Private Limited (hereinafter Ghai Lamba), is a corporation duly organized and existing under the laws of the Union of India, having a registered office at Top Floor, Marshall House, Hanuman Road, New Delhi, India (Verified Complaint, ¶ 4, p. 2).

5. Defendant Jag Mohan Kapur (hereinafter Kapur) is the proprietor of a restaurant business located at 538-540 Broadway, San Francisco, California 94108, which restaurant is currently doing business under the trade name Gaylord's (Affidavit of Jag Mohan Kapur, October 16, 1974, ¶¶ 6, 8, 9, pp. 2-3; Exhibits A-C, F, H, J, L-N, Q-X, BB attached thereto).

6. Plaintiff Ghai Lamba operates, supervises and provides technical assistance to a number of restaurants throughout the world operating and doing business under the service mark Gaylord. Ghai Lamba claims to be the owner throughout the world of all proprietary and other property rights in and to the mark and name Gaylord used in connection with such restaurants. Ghai Lamba also claims to own the rights to certain unique and secret food formulas and recipes for Indian and Tandoori food, dishes, and delicacies of all types, which food, dishes and delicacies are prepared and served in the Gaylord restaurants. At present there are twelve Gaylord restaurants located throughout the world which are operated by and/or receive technical assistance from Ghai Lamba (Verified Complaint, ¶ 7, pp. 2-3; Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 4, p. 2).

7. The first Gaylord restaurant was established in January 1952 in New Delhi, India, by Kwality Restaurant and Ice Cream Co., which is owned, in part, by Mr. P. L. Lamba and Mr. I. K. Ghai, both Indian nationals. The name Gaylord was derived by a combination of Ghai and Lamba, the two individuals responsible for starting the restaurant network. In 1956, the same company opened a second Gaylord restaurant in Bombay, India. The service mark Gaylord is registered in India under the name of Kwality Restaurant and Ice Cream Co. The Gaylord restaurants have acquired a reputation in India for excellence of food and service. The Indian Government granted a commission to Gaylord to operate a restaurant at the Indian Pavilion at the New York World's Fair in 1964-1965, and the name Gaylord appeared on menus used by the restaurant and was otherwise associated with the restaurant (Verified Complaint, ¶ 8, p. 3; Affidavit of Inderjit Puri, ¶ 5, p. 3).

8. Following the World's Fair, the Gaylord restaurant chain opened a restaurant in London, England, under the name Gaylord (India) Restaurant. Plaintiff Ghai Lamba was organized to manage, and is managing, the Gaylord restaurants outside of India. Mr. I. K. Chai and Mr. P. L. Lamba are directors of Plaintiff Ghai Lamba. Subsequently, a second Gaylord restaurant was opened in London, another Gaylord restaurant was opened in Trinidad, and additional Gaylord restaurants managed under the direction of Ghai Lamba were established and are currently operating in Kobe, Japan; Hongkong; Kowloon; Bangkok, Thailand; and Fiji (Affidavit of Inderjit Puri, ¶ 2, p. 2; Verified Complaint, ¶ 9, p. 3).

9. Ghai Lamba was appointed the official caterer for the Hospitality Division of the

Plaintiff's Exhibit B to Ajanta Complaint---Page 2

Ministry of External Affairs (The Foreign Ministry) of India. Through this office, Ghai Lamba's Gaylord restaurant prepared meals for notable Americans such as President Eisenhower; Mrs. John Kennedy, when she toured India as the First Lady of the United States; Assistant Secretary of State George Ball; Ambassador Kenneth Galbraith; President Nasser of Egypt; Leonid Brezhnev of the Soviet Union; and many others. Many other American dignitaries such as Ambassadors, Foreign Ministers, and consulate members, attended official functions catered by Gaylord (Affidavit of Inderjit Puri, ¶ 4, pp. 2-3).

10. In New Delhi, the United States maintained a full diplomatic corps and most of the members of this corps came to Gaylord's restaurant on a regular basis. On one occasion, United States doctors came and inspected Gaylord's restaurant and ice cream plant for the purpose of determining whether its sanitary conditions complied with United States standards. As a result of this inspection, the Gaylord restaurant was recommended to the U. S. diplomatic staff stationed in New Delhi. In Bombay, the United States Counsel General and his assistants frequently dined at the Gaylord restaurant (Affidavit of Inderjit Puri, ¶ 6, p. 3).

11. Many famous American and European actors and actresses have patronized the New Delhi Gaylord restaurant. These included Lauren Bacall, James Stewart, Gregory Peck, Diane Baker, William Holden, Robert Morley, and Horst Bucholst. Zubin Mehta, director of the Los Angeles Philharmonic Symphony Orchestra, dined at the London Gaylord restaurant many times. Mr. Mehta is a native of India, and he often entertained by hosting large parties at the Gaylord restaurant in London. These parties were attended by many dignitaries from the U. S. and elsewhere (Affidavit of Inderjit Puri, ¶ 7, p. 4).

12. Ghai Lamba operates a Gaylord restaurant on the Island of Trinidad. Many United States businesses maintain offices in Trinidad, including Amoco, Exxon, Texaco, and Pan American Badger Co. All of these companies maintain Gaylord house accounts, and their executives often eat at the Gaylord restaurant in Trinidad. These include Mr. David Rockefeller, President of the Chase Manhattan Bank in New York City, which has a large branch in Trinidad. Other American dignitaries who have dined at the Gaylord restaurant in Trinidad include Mr. Fife Symington, U. S. Ambassador to the Island of Trinidad (Affidavit of Inderjit Puri, ¶ 8, p. 4).

13. Approximately 400 people per day eat lunch and dinner at the Gaylord restaurant in New Delhi. There are two tea times—one in the morning and one in the afternoon—at which 400 to 500 additional people are served a day. The Chicago Gaylord restaurant serves about 120 to 150 people per weekday, and about 300 to 350 people per weekend day. The New York Gaylord restaurant serves about twice as many persons (Affidavit of Inderjit Puri, ¶¶ 9 and 10, pp. 4-5).

14. People from all over the United States have dined at the Gaylord restaurants in both Chicago and New York. Many U. S. citizens who have served in the Peace Corps in India have learned the language of India and are familiar with the Gaylord name and the cuisine in India. The Gaylord restaurants are also patronized by many U. S. executives from firms which have industrial collaboration with Indian firms for the Indian government. These executives are from all over the U. S. and many have been in India and have eaten at the Gaylord restaurants in India. All of the chefs and managerial staff in the Gaylord restaurants in the U. S. are from India. The stewards are also from India. The food cooked in the U. S. restaurants is authentic Indian food, and only clay tandoori ovens are used to preserve the taste and authenticity of the food (Affidavit of Inderjit Puri, ¶¶ 11 and 13, pp. 5-6).

15. In New Delhi, the Gaylord restaurant is advertised on billboards located in railroad stations, on touring busses, in hotels and in all major newspapers and magazines, including Readers Digest, which is published and circulated in India. Advertising is also carried out in movie theatres. In London, approximately $10,000 a year is spent on advertising the Gaylord restaurants there. The menus of the Gaylord restaurants are the same in every country, except in India where additional Indian food is served to satisfy the desires of the clientele (Affidavit of Inderjit Puri, ¶¶ 14 & 13, p. 6).

16. Plaintiffs have spent a substantial amount of money for advertising and promoting the Gaylord restaurants in the United States and elsewhere throughout the world. For the Chicago restaurant alone, Plaintiffs have spent approximately $24,000 per year on advertising and promotion. The New York restaurant has spent over $20,000 in advertising and promotion since its opening in March 1974. Combined revenues of the U. S. Gaylord restaurants have exceeded 1 million dollars and the average projected annual revenues currently exceed $1.4 million (Second Affidavit of Krishan Chopra, October 16, 1974. ¶ 8, p. 4).

17. Pursuant to their national and worldwide promotional program for the Gaylord restaurants, Plaintiffs have recently arranged to advertise the restaurants in the Trans World Airlines flight magazine entitled TWA Ambassador of November 1974, which is carried on all of TWA's domestic and international flights. TWA has numerous flights to

San Francisco from many cities, including Chicago and New York (Second Affidavit of Krishan Chopra, October 16, 1974, ¶ 9, p. 4; Pl. Ex. 2W, attached to Plaintiffs' Brief in Reply to Defendant's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction).

18. Ghai Lamba, by reason of its maintenance of high standards of quality for products sold by restaurants operated under its supervision, and its maintenance of high standards of service rendered by such restaurants, has created a worldwide reputation and good will for restaurants operated under the name Gaylord (Affidavit of Inderjit Puri, ¶ 16, p. 7; Verified Complaint, ¶ 16, p. 7).

19. Ghai Lamba entered into a Technical Collaboration Agreement with Chopra in 1972 whereby Chopra is the United States and Mexican resident representative of Ghai Lamba, having the responsibility of establishing, operating, and offering technical assistance to restaurant businesses in the United States and Mexico, which restaurants are and shall serve Indian and Tandoori foods, dishes and delicacies. These restaurants are required to serve food and maintain the reputation, quality standards and good will as established by Ghai Lamba and as exhibited in other restaurants operating throughout the world under the service mark Gaylord (Verified Complaint, ¶ 11, p. 4).

20. Pursuant to his collaboration with Ghai Lamba, Chopra established a restaurant business featuring Indian and Tandoori food at 678 North Clark Street, Chicago, Illinois, which presently operates under the service mark Gaylord. Since October 2, 1972, Plaintiffs have continuously used the mark Gaylord in connection with their restaurant business in Chicago. Mr. Krishan Chopra controls the operation of the Chicago Gaylord restaurant. He is also President of Kwality Food and Restaurant Co., a New York corporation which has established and is currently operating a restaurant under the service mark Gaylord featuring Indian and Tandoori food at 50 East 58th Street, New York City, New York 10022. This restaurant began operations in March 1974. Ghai Lamba provides technical services and know-how in the operation of the Chicago and New York Gaylord restaurants (Verified Complaint, ¶ 12, pp. 4-5; Affidavit of Inderjit Puri, ¶ 5, p. 3).

21. The aforesaid collaboration agreement between Plaintiffs Ghai Lamba and Chopra authorizes Chopra to expand and develop the operation of Indian and Tandoori food and service restaurants under the service mark Gaylord throughout the United States and Mexico. In addition to the Gaylord restaurants presently being operated in Chicago and New York, Plaintiff Chopra has been in communication with certain individuals who are interested in collaborating with Chopra in the establishment of additional Gaylord Indian and Tandoori food restaurants in San Francisco, Boston, Miami, Atlanta, Honolulu, Dallas, Seattle, Los Angeles, Cleveland, Philadelphia and Detroit (Verified Complaint, ¶ 13, p. 5; Second Affidavit of Krishan Chopra, Oct. 16, 1974, ¶ 10, p. 4).

22. In early January 1974, Chopra met with Mr. J. S. Sachdev of San Bruno, California, and offered him an interest in the planned San Francisco Gaylord restaurant. Chopra also asked Sachdev to help him find a suitable location for the new Gaylord restaurant. On or about January 8, 1974, Chopra and Sachdev surveyed the Indian restaurants in the San Francisco area. During this survey, they dined at Defendant's Taj Mahal restaurant and met the brother of the Defendant Jag Mohan Kapur, who indicated that he was aware of the Gaylord restaurant chain and of the Chicago Gaylord restaurant connected with that chain. He at no time stated that he or his brother had any intention of opening a new restaurant under the name Gaylord's or any other name (Second Affidavit of Krishan Chopra, Oct. 16, 1974, ¶ 6, p. 3; Deposition of Jaswant Singh Sachdev, pp. 4-6, 16, 21).

23. In early January 1974, Chopra also met with Mr. Surinder K. Sehgal, a representative of Air India, at Patson Travel Agency in San Francisco. Also present at that time was Mr. Roni Sen Gupta. Chopra informed both men that he was seeking a site to open a Gaylord restaurant in San Francisco. Both men knew of Gaylord's organization in India and the United States, and offered to help Chopra find a location for the San Francisco Gaylord restaurant (Affidavit of Roni Sen Gupta, ¶ 4, p. 2; Second Affidavit of Krishan Chopra, ¶ 7, pp. 3-4).

24. In the July 8, 1974 issue of Nations Restaurant News, a nationally distributed trade periodical directed to the restaurant trade, an article appeared describing the international network of Gaylord restaurants, and stated that the network had plans for a nationwide linkup in the United States. In addition, all guest checks in Gaylord's presently operating United States restaurants in Chicago and New York have printed on their reverse side the fact that future Gaylord restaurants are planned for San Francisco and Los Angeles (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 5, pp. 2-3; Exhibits A and B attached thereto).

25. Plaintiff Chopra claims ownership of all right, title, and interest in and to the service mark Gaylord in the United States, and of the good will represented by the mark. Chopra has lodged an application for Federal Registration of the service mark Gaylord in the

United States Patent Office for restaurant, catering and carry-out services, filed November 16, 1972, and bearing Serial No. 411,414. Plaintiff Gaylord (India) Restaurant, Inc., and Kwality Food and Restaurant Company are licensees under the service mark (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶¶ 3-4, p. 2).

26. Plaintiffs have received extensive public recognition for their restaurant services under the mark Gaylord such that Plaintiffs' network of Gaylord restaurants enjoys a worldwide reputation for high quality food and superior service in providing authentic Indian and Tandoori cuisine. As an example, in 1973, the Chicago Gaylord restaurant was acclaimed by Sherman Kaplan of WBBM radio as one of the top ten restaurants in 1973 in Chicago. Articles written about Gaylord's restaurants have appeared in several national and regional magazines and periodicals. These include The New York Times, April 26, 1974 and September 26, 1974; The Chicagoan Magazine, June 1974; The Chicago Tribune, October 25, 1973; Chicago Daily News, April 7-8, 1973; The Indianapolis News, July 30, 1974; Forbes Magazine, July 15, 1974; Visitors East Magazine, June 1974 and September 1974; India Abroad Magazine, March 8, 1974; Carte Blanche Magazine, September-October 1974; and Esquire Magazine, October 1974 (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 11, p. 5; Verified Complaint, ¶ 15, p. 6, and Pl. Exs. B-M attached thereto; Second Affidavit of Krishan Chopra, Oct. 16, 1974, ¶¶ 2-5, p. 2 and Pl. Exs. S-Z).

27. Defendant, since August 31, 1974, has been operating a restaurant at 538-540 Broadway, San Francisco, California 94108, under the name Gaylord's. The menu and guest checks used in Defendant's restaurant display the name Gaylord's, and the restaurant features, inter alia, Indian cuisine. Defendant's telephone is answered by saying, "Gaylord's". A large, vertical exterior sign, prominently displaying the name Gaylord's has been erected on Defendant's restaurant premises. This sign is approximately 18 feet high (Affidavit of Jag Mohan Kapur, Oct. 16, 1974, ¶ 12, p. 4; ¶ 8, pp. 2-3; and Exhibits A, T, U, V, W attached to said Affidavit; Affidavit of Krishan Chopra, Sept. 20, 1974; ¶ 10, p. 4; Pl. Ex. 2E attached to Affidavit of Milton W. Schlemmer, Oct. 16, 1974).

28. Defendant was a resident of the Union of India, and, when he established his Gaylord's restaurant, was aware of Plaintiffs' restaurant business and the worldwide reputation Plaintiffs' business enjoys (Affidavit of Jag Mohan Kapur, Oct. 16, 1974, ¶ 3, pp. 1-2; Deposition of Jag Mohan Kapur, pp. 21, 26).

29. During the week of August 23, 1974, Chopra spoke to Mr. Roni Gupta, who operates Patson Travel Agency in San Francisco. He had knowledge that Chopra was planning to establish a Gaylord Indian restaurant in San Francisco. On this occasion, Mr. Gupta advised Chopra that he received an invitation from Mr. Kapur to the grand opening of Gaylord's restaurant in San Francisco. Chopra told Mr. Gupta that he had not yet opened a restaurant in San Francisco, and that someone else must be intending to operate under the name Gaylord. Mr. Gupta then advised Chopra that the new restaurant was being operated by Mr. Jag Mohan Kapur, who also operates the Taj Mahal Restaurant in San Francisco (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 6, p. 3; Affidavit of Roni Sen Gupta, ¶ 5, pp. 2-3).

30. One or two days following his conversation with Mr. Gupta, Chopra telephoned the Taj Mahal Restaurant in San Francisco, and spoke to a gentleman who advised him that the operators of the Taj Mahal were going to open a new restaurant called Gaylord of India in about one or two weeks, once certain legal problems were disposed of (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 7, pp. 3-4). On October 2, 1974, one of the waitresses in Defendant's Gaylord's restaurant stated to two diners that the name Gaylord was the name of a famous restaurant in India, and also in Chicago and New York. She said all of these other restaurants were in a chain (Affidavit of Fran Serlin Brezner, ¶ 4, p. 2).

31. On or about August 29, 1974, Chopra notified his attorney of the pending opening of Mr. Kapur's Gaylord restaurant. Chopra's attorney sent a letter dated August 30, 1974 to Mr. Jag Mohan Kapur, advising him of Plaintiffs' rights in the service mark Gaylord, and requesting that Mr. Kapur immediately give assurance that he would discontinue the use of the name Gaylord in connection with his new restaurant. The letter was received by Mr. Jag Mohan Kapur on September 6, 1974, at which time Defendant had not yet begun operation of his restaurant using the name Gaylord's. Defendant ignored the request contained in the letter of August 30, 1974, and continued to use the name Gaylord without Plaintiffs' consent, in a manner which is likely to cause confusion, mistake, and deception (Affidavit of Krishan Chopra, Sept. 20, 1974, ¶ 8; Pl. Ex. P attached to Verified Complaint; Affidavit of Jag Mohan Kapur, Oct. 16, 1974, ¶ 7, p. 2; Verified Complaint, ¶ 19, pp. 7-8).

32. Plaintiffs' worldwide reputation has extended to the United States and particularly to California, and there is a substantial likelihood that customers of Defendant's Gaylord's restaurant are presently being confused and misled into believing that said restaurant is

owned and operated by Plaintiffs. (Affidavit of Inderjit Puri, ¶ 16, p. 7).

33. Defendant's acts, if continued, will cause irreparable and substantial damage to Plaintiffs, and will result in Defendant being unjustly enriched.

## Conclusions of Law

[1] A preliminary injunction is appropriate under the Lanham Act, 15 U.S.C. § 1125(a), if Plaintiffs demonstrate: (1) that there is a substantial probability of Plaintiffs' ultimate success on the merits at trial; (2) that Plaintiffs are being irreparably injured by the actions of Defendant complained of; and (3) that the balance of equities weighs in Plaintiffs' favor. Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210, 163 USPQ 602 (N.D. Cal. 1969). Plaintiffs have satisfied these requirements.

[2] Plaintiffs have shown with reasonable certainty that they will prevail on the merits at trial. Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143, 140 USPQ 154, 155-156 (9th Cir. 1964). Under § 43(a) of the Lanham Act, the test of infringement is likelihood of confusion, which is judged by the following factors: (a) the area of concurrent sale; (b) the extent to which the services or products are related; (c) the extent to which the mark and the alleged infringing name are similar; (d) the "strength" or novelty of plaintiffs' mark; (e) evidence of bad faith or intention of defendant in selecting and using the alleged infringing name with a view to obtaining some advantage from the good will which plaintiffs have built; and (f) evidence of actual confusion. Paul Sachs Originals Co. v. Sachs, dba Sachs of California, 325 F.2d 212, 214, 139 USPQ 414, 415-416 (9th Cir. 1963); K-S-H Plastics, Inc. v. Carolite, Inc., 408 F.2d 54, 57, 161 USPQ 75, 76-77 (9th Cir. 1969), cert. denied 396 U.S. 825, 161 USPQ 75 (1970); Carter-Wallace v. Procter & Gamble Co., 434 F.2d 794, 167 USPQ 713 (9th Cir. 1970).

[3] In this case, the geographical overlap between Plaintiffs' and Defendant's services is minimal at most: Defendant's restaurant is in San Francisco and Plaintiffs' nearest restaurant is in Chicago. However, the clientele of Plaintiffs' restaurants is ambulatory and Plaintiffs' reputation and good will have extended to the San Francisco area. In these circumstances, geographical proximity is not necessary. See, e.g., Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 146 USPQ 566 (7th Cir. 1965); Stork Restaurant v. Sahati, 166 F.2d 348, 76 USPQ 374 (9th Cir. 1948). In addition, Plaintiffs had begun efforts to find a suitable location for a restaurant in the San Francisco area before Defendant opened his restaurant: the second

[4] user of a confusingly similar service mark may be enjoined if there is a reasonable prospect that the first user will expand into the area. See, e.g., Food Fair Stores, Inc. v. Lakeland Grocery Corp., 301 F.2d 156, 133 USPQ 127 (4th Cir. 1962); Burger King Restaurants, Inc. v. Brewer, 244 F.Supp. 293, 298, 146 USPQ 461, 465-466 (D. Tenn. 1965).

The services of Plaintiffs and Defendant are strikingly similar. Plaintiffs' restaurants all serve Indian and Tandoori food. Although Defendant's restaurant serves an international cuisine, it features Indian food.

The names Gaylord, first used by Plaintiffs, and Gaylord's, recently adopted by Defendant, are virtually identical.

Plaintiffs' mark, being derived from a combination of the last names of the two Indian founders of the Gaylord chain, is clearly novel for an Indian restaurant. This Court is not persuaded that the strength of Plaintiffs' mark is diminished because names similar to Gaylord have been used on laundries, ice cream parlors, apartment buildings, and other unrelated businesses in the San Francisco area.

[5] On the basis of this Court's findings of fact, the conclusion is unavoidable that Defendant chose the name for his restaurant with the intention of capitalizing on the good will and reputation of Plaintiffs. Defendant operates another Indian restaurant in San Francisco, and he was well aware of Plaintiffs' worldwide reputation before he opened the restaurant here in question. In such circumstances, the inference of likelihood of confusion is "readily drawn". Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 157-58, 136 USPQ 508, 515-516 (9th Cir. 1963).

Plaintiffs are being irreparably injured by the actions of Defendant here complained of, in a manner that is an appropriate subject for injunctive relief. See Fleischmann Distilling Corp., supra; Tisch Hotels, Inc., supra; Stork Restaurant, supra. Injury to Plaintiffs' reputation results if a dissatisfied patron of Defendant's restaurant confuses the source of the services.

In view of the foregoing, it is clear that the balance of equities weighs in favor of Plaintiffs. The issuance of this preliminary injunction has been conditioned upon the receipt of a substantial bond from Plaintiffs sufficient to recompense Defendant for his loss should it be determined at a later date that he was wrongfully enjoined.\*

---

\* Editor's Note: Following the issuance of a preliminary injunction, the parties resolved their differences and agreed to the entry of a permanent injunction, which was filed on January 8, 1975.

## HRHI/AJANTA ASSIGNMENT OF TRADEMARK AND GOODWILL

WHEREAS, HOTEL RESTAURANT HOLDINGS INTERNATIONAL, INC. (hereinafter "ASSIGNOR"), a California corporation, having a place of business at 900 North Point Street, San Francisco, California 94109, is the sole and exclusive owner of the trademark, "GAYLORD" (hereinafter "TRADEMARK"), for use with restaurant, catering and carry-out services, and is the sole and exclusive owner of United States Trademark Registration No. 1,033,385 and any rights to file subsequent registrations (hereinafter "REGISTRATIONS") for "GAYLORD" for use with restaurant, catering and carry-out services and of the goodwill (hereinafter "GOODWILL") of the business carried on by it in connection with said TRADEMARK and REGISTRATION;

WHEREAS, AJANTA CORPORATION (hereinafter "ASSIGNEE"), a California corporation, having a place of business at 900 North Point Street, San Francisco, California 94109, is desirous of acquiring from the ASSIGNOR all right, title and interest in and to said TRADEMARK said REGISTRATIONS together with the GOODWILL of the business carried on in connection with said TRADEMARK and said REGISTRATIONS;

NOW, THEREFORE, in consideration of good and valuable consideration received by ASSIGNOR from ASSIGNEE, the receipt of which is hereby acknowledged by ASSIGNOR;

1. ASSIGNOR hereby sells, assigns and transfers to ASSIGNEE, its successors, assigns and other legal representatives the entire right, title and interest in and to said TRADEMARK, said REGISTRATIONS and the GOODWILL of the business heretofore carried on by ASSIGNOR in connection with said TRADEMARK and said REGISTRATIONS, together with all other rights and claims in the mark "GAYLORD" now or hereafter acquired by ASSIGNOR including rights and claims under licenses or agreements pertaining to said TRADEMARK and said REGISTRATIONS and together with all claims, demands and causes of action for the use or past infringement of said TRADEMARK or said REGISTRATIONS or for unfair competition in business in connection therewith wheresoever or by whomsoever committed, the same to be held and enjoyed by ASSIGNEE, its successors, assign or other legal representatives as fully and entirely as the same would or could have been held and enjoyed by ASSIGNOR had this assignment and sale not been made.

2. ASSIGNOR warrants, covenants and represents that ASSIGNOR is the owner of said TRADEMARK and said REGISTRATION, has the full right to convey the entire interest hereby assigned.

3. ASSIGNOR further covenants that it will promptly assist ASSIGNEE in any litigation involving any right, title or interest assigned herein.

4. ASSIGNOR further covenants with ASSIGNEE, to execute when requested such additional assignments, instruments and documents as may be necessary or desirable to effectuate this assignment.

Plaintiff's Exhibit C to Ajanta Complaint---Page 1

5. The terms, covenants and provisions of this assignment shall inure to the benefit of ASSIGNEE, its successors, assigns and other legal representatives, and shall be binding upon ASSIGNOR, its legal representatives and assigns.

IN WITNESS WHEREOF, ASSIGNOR has hereto affixed its corporate name and seal by its officer thereunto duly authorized, and delivered this instrument to said ASSIGNEE, this 15 day of October, 1997.

HOTEL RESTAURANT HOLDINGS
INTERNATIONAL, INC.

By: *[signature]*
Name: Kishore Kripalani
Title: Chief Executive Officer

### CERTIFICATE OF ACKNOWLEDGMENT

State of California )
County of San Francisco )

On 10/15/97 before me, Lissette Miller, Notary Public
*(name and title of officer)*
personally appeared **Kishore Kripalani**, ~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(ies), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *[signature]*

[Notary seal: Lissette Miller, Comm. #1083148, NOTARY PUBLIC - CALIFORNIA, City & County of San Francisco, Comm. Exp. Jan. 15, 2000]

Plaintiff's Exhibit C to Ajanta Complaint---Page 2