Gregory F. Buhyoff
California State Bar No. 141437
WEIDE & MILLER, LTD.
Bank of Nevada Bldg., Suite 530
7251 W. Lake Mead Blvd.
Las Vegas, Nevada 89128
Tel: (702) 382-4804
e-Mail: GBuhyoff@weidemiller.com
Fax: (702) 382-4805

Attorneys for Defendants Defendant Gaylord
and Satpal S. Kohli

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AJANTA CORPORATION and KISHORE KRIPALANI, | CASE NO. C07-02823 MJJ |
| Plaintiffs, | Date:        September 11, 2007 |
| vs. | Time:        9:30 a.m. |
| | Courtroom:   11, 19th Floor |
| DEFENDANT GAYLORD and SATPAL S. KOHLI, | Before:      The Honorable Judge |
| | Martin J. Jenkins |
| Defendants. | **DECLARATION OF SATPAL S. KOHLI IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE 12(b)(3), OR IN THE ALTERNATIVE TO TRANSFER FOR IMPROPER VENUE (28 USC §1406(a)) OR IN ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))** |

I, Satpal S. Kohli, declare as follows:

1.     I am one of the defendants in the above-titled action.

2.     I have personal knowledge of each matter addressed herein, and as to those matters stated on information and belief, I believe them to be true.

3.    I: (i) am domiciled in the State of Nevada and reside at 50 E. Serene Avenue, Las Vegas, Nevada 89123, (ii) do not have a telephone within the State of California, and (iii) do not main maintain any office in California.

4.    I am currently a Managing Member of Defendant Gaylord, LLC (hereinafter referred to as "Defendant Gaylord"), a Nevada limited liability company.

5.    Defendant Gaylord is a Nevada limited liability company, which was established on May 31, 2002 by Plaintiff Kishore Kripalani.

6.    Since approximately February, 2003, Defendant Gaylord has been operating a Gaylord Indian Restaurant (hereinafter the "Nevada Restaurant") in the Rio Hotel, 3700 W. Flamingo Road, Las Vegas, Nevada 89103 pursuant to a Restaurant Lease Agreement (hereinafter the "Rio Lease") between Defendant Gaylord as Tenant and Rio Properties, Inc. as Landlord.

7.    Article 5.7 of the Rio Lease, among other things, the Lease states:

> "the trade name and mark under which the Demised Premises shall be operated is "Gaylord's. Landlord and Tenant agree that, without regard to whether the same is registered or capable of registration, all rights to such trade name and mark and to all concepts, proprietary ideas or designs relating thereto (collectively and separately, trade name) belong, and shall belong to and be owned by Tenant. Tenant shall not use or occupy the Demised Premises under any other trade name without Landlord's prior written consent......"

Exhibit A is a true copy of Article 5.7 of the Rio Lease.

8.    Article 26.14 of the Rio Lease also states that it "shall be governed and construed in accordance with the laws of the State of Nevada." Exhibit B is a true copy of Article 26.14 of the Rio Lease.

9.    Since its establishment, Defendant Gaylord has provided restaurant services in Las Vegas Nevada only.

10.    Plaintiff Kishore Kripalani (hereinafter also referred to as "Plaintiff Kripalani" or "Mr. Kripalani") was the organizer and original managing member of Defendant Gaylord.

11.    In the first quarter of 2004, approximately two years after Defendant Gaylord was established, Mr. Kripalani expressed interest in selling his 50% membership/ownership interest

1    in Defendant Gaylord.  This interest was expressed to me during one of Mr. Kripalani's visits to

2    Las Vegas.

3    12.    In this connection, Plaintiff Kripalani and I signed a MEMBERSHIP INTEREST

4    PURCHASE AGREEMENT ("MIPA") in Las Vegas, Nevada on June 17, 2004.

5    13.    Article 13 of the MIPA states that the MIPA "shall be construed in accordance with, and

6    governed by, the laws of the State of Nevada as applied to contracts that are executed and

7    performed entirely in Nevada."  Exhibit C  is a true copy of Article 13 of the MIPA.

8    14.    Among other things, the MIPA required me to pay $275,000 for Mr. Kripalani's

9    membership interest in Defendant Gaylord, which price I have fully paid pursuant to the MIPA.

10   15.    Article 14 of the MIPA also states that "the Company shall pay to Seller a franchise fee

11   in the amount of Two Percent (2%) of the gross revenue received from the operation of the

12   Restaurant and any other revenue received under the Gaylord name (the "Restaurant Franchise

13   Fee"), to be paid to Seller on a quarterly basis."  Exhibit C is a true copy of Article 14 of the

14   MIPA.  The MIPA defines "Company" as Gaylord, LLC and "Seller" as Plaintiff Kripalani...

15

16   16.    Under the MIPA, neither Plaintiff Kripalani nor Plaintiff Ajanta has the right to exercise

17   control over the quality of the restaurant services provided by Gaylord, LLC at the Nevada

18   Restaurant, nor has either Plaintiff ever exercised such control.

19   17.    Under the MIPA, neither Plaintiff Kripalani nor Plaintiff Ajanta is obligated to provide

20   technical assistance to the Nevada Restaurant, nor has either Plaintiff ever provided such

21   technical assistance.

22   18.    The parties to the MIPA agreed in a separate writing to enter into a "License Agreement",

23   but have been unable to reach agreement on the terms of such "License Agreement."

24   19.    The poor financial performance of the Nevada Restaurant prompted Defendant Gaylord

25   to propose that the 2% of gross revenue franchise fee be replaced with a flat monthly fee of

26   $1,000.  In December 2005, Mr. Kripalani orally agreed to this, but then went back on his word.

27   21.    The Operating Agreement of Gaylord, LLC ("Operating Agreement") is governed by

28   Nevada law.    Exhibit D is a true copy of the relevant provision of the Operating Agreement.

22.    Defendant Gaylord: (i) provides its restaurant service in Las Vegas, Nevada only, (ii) has no subsidiaries or controlled entities in California, (iii) is not authorized to do business in California, (iii) has no agent for service of process in California, (iv) has no office or telephone in California, (v) has no employees in California, (vi) is not supplied with goods from vendors in California.    All of the books and records of Defendant Gaylord are in Nevada.

23.    Defendant Gaylord maintains a single website located a www.gaylordlasvegas.com.  Like any website on the world wide web, Defendant Gaylord's website is accessible to California residents.  However, this passive website only advertises the restaurant services the Nevada Restaurant provides in Nevada.

24.    The Nevada Restaurant Association is a membership organization which serves the needs of its membership, namely, restaurants and providers of similar services in Nevada.  Though the Nevada Restaurant Association lists its members on an interior page of its website, this website is not an advertising website and is plainly not directed at the restaurant-going public.

25.    The website located at www.usmenuguide.com is not controlled by Defendant Gaylord or myself.  I have never listed, nor requested the listing of any information about the Nevada Restaurant on www.usmenuguide.com, nor has any current member or manager of Defendant Gaylord ever listed or requested the listing of such information.  To my knowledge, www.usmenuguide.com is a database of classified information about restaurants and similar establishments of throughout the United States.  On information and belief, the information about the Nevada Restaurant on www.usmenuguide.com was posted by Kishore Kripalani prior to June 17, 2004 and has never been taken down.

26.    Advertisements for Defendant Gaylord's Nevada Restaurant have previously appeared on a few occasions in *India West* and *Nirvana Woman*, newspapers that are circulated among the Indian communities throughout the United States and Canada.  Defendant Gaylord does not currently advertise in *India West*, *Nirvana Woman* or any other newspaper.  Indeed, the advertisements in *India West* and *Nirvana Woman* to which the Complaint refers were not

1  ordered by the current management of Defendant Gaylord, but were ordered by previous

2  management and carried over without the knowledge of me or Gaylord, LLC.

3  27.     The following are the names and locations of all persons known to be percipient

4  witnesses to matters relevant to this action, and the matters upon which they are expected to

5  testify:

6      (A)     Satpal S. Kohli resides in Las Vegas, Nevada, and is expected to testify as to the
7          circumstances surrounding Defendant Gaylord's use of the GAYLORD mark in
        connection with the Nevada Restaurant, the Membership Interest Purchase
8          Agreement; the Rio Lease, the Gaylord, LLC Operating Agreement, and the
9          financial condition of Defendant Gaylord.

10      (B)     The President, Vice-President of Marketing, Vice President of Food and
        Beverage, Director of Public Relations and Director of Retail Operations of Rio
11          Properties, Inc. all of whom reside in Las Vegas Nevada.  These individuals are
12          expected to testify regarding the Rio Lease, including the trademark and trade
        name issues relevant thereto, the policies of Rio Properties, Inc. towards its
13          tenants, business levels at the Rio Hotel, Inc. that effect customer patronage at the
14          Nevada Restaurant, and the revenues received by the Nevada Restaurant.

15      (C)      Bobbi Sahni and Simran Sahni, both of whom were members of Defendant
        Gaylord, and both of whom will testify as to the advertising practices of Plaintiff.
16

17      (D)     Multiple employees of the Nevada Restaurant, currently residing in Las Vegas,
        Nevada, who were employed while Plaintiff Kripalani was managing the Nevada
18          Restaurant, and representatives of the local culinary union.  These employees and
        representatives are expected to testify as to discrepancies in the number of hours
19          they worked, and the number of hours that Plaintiff Kripalani reported to the local
20          culinary union.

21      (E)     Rhet Nelson, a resident of Las Vegas, Nevada, who will testify about the website
22          of Defendant Gaylord and related advertising and marketing practices.

23      (F)     Relevant persons of Preferred Public Relations and Marketing, who reside in Las
        Vegas, Nevada and will testify on the advertising and marketing practices of
24          Defendant Gaylord.

25      (G)     Representatives of the following publications in which Defendant Gaylord has
26          advertised, all of whom reside in Las Vegas, Nevada: *24/7*, *Showbiz*, *Las Vegas
        Weekly*, *Las Vegas Review Journal*, *The Best Restaurant Guide* and *Restaurant on
27          the Run*.

28

28.     Defendants anticipate filing multiple counterclaims based on Nevada law, including, without limitation, claims for breach of the representations and warranties in the MIPA, indemnification under the MIPA, breach of fiduciary duty, as well as assert equitable defenses based on Nevada law, including but not limited to estoppel and waiver.

Pursuant to 28 U.S.C. §1746 I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 21, 2007

_____

Satpal S. Kohli

**EXHIBIT A**

specifically, but not limited to, the requirement that all employees of Tenant that serve alcoholic beverages or supervise employees serving alcoholic beverages must have successfully completed a nationally recognized alcohol awareness training program and that Tenant maintain documentation verifying completion of such a course in each employee's file.

**5.3     Prohibited Uses.**  Tenant shall not conduct any gaming activity on the Demised Premises.  Tenant shall not use or occupy, or permit the use or occupancy of the Demised Premises or any part thereof, for any purpose other than that specifically set forth above or in any manner which shall adversely affect or interfere with any services required to be furnished by Landlord to Tenant or to any other Tenant or occupant of the Hotel or with the proper and economical rendition of any such service or with the use or enjoyment of any part of the Hotel by any other Tenant or occupant.

**5.4     Entertainment.**   Tenant may provide entertainment incidental to restaurant operations.   Tenant shall pay all costs and fees (including license fees, casino entertainment tax, and royalties, if any) for live, recorded or sound transmissions. In no event shall entertainment of any kind be permitted if the sounds as reproduced, transmitted or produced are of such a type, in Landlord's sole discretion, as to disturb guests of the Casino/Hotel.

**5.5    Menus and Uniforms.** Tenant may establish menu prices, content and design for Indian cuisine without Landlord's prior consent, however, non-Indian menu items shall require Landlord's prior written consent.

Landlord shall have the right to approve uniforms and dress codes for all Demised Premises workers. Tenant shall not initiate or change Demised Premises uniforms or dress codes without Landlord's prior written consent.

**5.6     Daily Operations.** Tenant shall operate and maintain the restaurant for full dinner service and entertainment in accordance with Section 5.4 hereof continuously at a minimum during the hours of 5:00 PM to 11:00 PM (or such other hours mutually agreed to by Landlord) seven days per week, including weekends and holidays, unless prevented from doing so by an emergency condition which causes an imminent threat of personal injury to customers of the Demised Premises (e.g., fire, flood or similar calamity within the Demised Premises, but excluding any repairs or replacements required of Landlord under Section 6.2 of this Lease), in which case the Demised Premises may be closed for the duration of such calamity, but shall immediately thereafter reopen and again continuously operate, except to the extent that such reopening and/or continuous operation is excused by Section 14.2 (in the case of casualty) or Section 15.2 (in the case of condemnation) of this Lease.

**5.7     Trade Name.** The trade name and mark under which the Demised Premises shall be operated is "Gaylord's".  Landlord and Tenant agree that, without regard to whether same is registered or capable of registration, all rights to such trade name and mark and to all concepts, proprietary ideas or designs relating thereto (collectively and separately,

"trade name") belong, and shall belong to and be owned by Tenant. Tenant shall not use or occupy the Demised Premises under any other trade name without Landlord's prior written consent, or use or authorize the use by others of the trade name and mark at any other business or at any other location within a two mile radius of the Casino/Hotel. Tenant shall indemnify, defend and hold Landlord harmless from and against any action which may be brought challenging the use of such trade name at the Demised Premises.

No advertisement, sign or other form of promotion for the Demised Premises shall in any manner use the name or mark, Rio, Masquerade Village, any variant or abbreviation thereof, or any other trade name belonging to Landlord or its affiliates, except in accordance with separate license agreements or other written authorizations between Tenant and Landlord, as the case may be.

Tenant acknowledges that, if it breaches any provision of this Section 5.7, Landlord shall have no adequate remedy at law and, in addition to any other remedy, Landlord shall be entitled to enjoin Tenant from such violations.

**5.8    Compliance with Law.**   Tenant, at its own expense, shall conform, in every respect, to all laws, ordinances and regulations now in force, or that are enacted or adopted hereafter, which affect the use or occupancy of the Demised Premises (including, without limitation, the Casino/Hotel's certificate of occupancy and gaming license, federal, state and local laws governing the handling, storage, use or disposal of hazardous waste, hazardous substances or toxic substances and the Americans with Disabilities Act, as they affect areas under Tenant's control or Tenant's operations) and shall comply with all rules, orders, regulations, and requirements of the local fire rating bureau, health department, alcoholic beverage regulatory body and any other governmental entities having jurisdiction over Tenant's operations at the Demised Premises. Tenant shall promptly, upon demand, reimburse Landlord for any costs, including without limitation, additional premium charges for any policy or policies of insurance for the Casino/Hotel caused by reason of Tenant's failure to comply with the provisions of this Section 5.8. It is the intent of the parties that Landlord shall be responsible to effect any structural alterations or additions to the Casino/Hotel which are required to meet minimum legal requirements to allow use of the Demised Premises as such, but that Tenant shall be responsible for: (i) all non-structural alterations and additions; and (ii) for any structural alterations or additions to the Casino/Hotel or Demised Premises now or hereafter required, in whole or in part, by Tenant's particular use of the Demised Premises (as, for example and without limiting the generality of the foregoing, Tenant's design, particular methods of food preparation, substances used or stored, manner of arrangement of furnishings or equipment, or number of employees or customers allowed).

The Demised Premises and every part thereof shall be kept by Tenant in a clean, sanitary and wholesome condition, free from any objectionable noises, odors or nuisances, public or private, including, without limitation, infestations of insects or rodents. Notwithstanding anything to the contrary set forth herein, Tenant may operate a Tandoori oven so long as it complies with applicable government codes and regulations. Tenant shall at all times

\\LVFILE1\LEGAL\Rio 2002\Retail\Gaylord\Gaylord 4-29-02 Execution draft.Rev.doc
June 17, 2002  12:16PM

**EXHIBIT B**

acknowledges that no lease broker, agent, or other person has had or does have the authority to bind Landlord to any statement, covenants, warranty or representation and that no person purporting to hold such authority shall bind Landlord and that it is not reasonable for Tenant to have assumed that any person had or has such authority. Further, neither Landlord's execution of this Lease nor any other of its acts shall be construed in any way to indicate Landlord's ratification, consent to or approval of any act, statement or representation of any third person.

**26.12  Provisions Severable.**  Any provision of this Lease which shall prove to be invalid, void or illegal shall in no way affect, impair or invalidate any other provision hereof, and the remaining provisions hereof shall nevertheless remain in full force and effect; provided, however, that if any provision of this Lease which is held invalid, illegal or void would, in a material manner, deprive Landlord of the economic benefit of this Lease, Landlord shall have the right to terminate this Lease by giving thirty (30) days advance notice of termination to Tenant.

**26.13  Counterparts.**  This Lease may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute and be construed as one and the same instrument.

**26.14  Applicable Law and Venue.**  This Lease shall be governed by and construed in accordance with the law of the State of Nevada, without regard to the principles of conflicts of law.  Any action to declare or enforce any rights or obligations under this Lease may be commenced by any party in the courts of the United States in the county in which the Casino/Hotel is located.  Tenant hereby consents to the jurisdiction of such court for such purposes and agrees that any notice, complaint or other legal process delivered to Tenant shall constitute adequate notice and service or process for all purposes and shall subject Tenant to the jurisdiction of such court for purposes of adjudicating any matter related to this Lease.

**26.15  Incorporation of Exhibits.**  All Exhibits referenced in this Lease (or which are executed concurrently herewith and attached hereto and refer to this Lease) are incorporated herein by reference as though fully set forth herein.

**26.16  Brokers.**  Landlord and Tenant warrant and represent that they have had dealings only with each other and that they know of no person who is or might be entitled to a commission, finder's fee or other like payment in connection with this Lease and do hereby indemnify and agree to hold each other harmless from and against any and all loss, liability and expenses (including attorneys fees and expenses) that either of them may incur should such warranty and representation of the other prove incorrect.

**26.17  Other Tenancies.**   Landlord reserves the right to effect such tenancies, concessions, licenses and separated services and operations in the Casino/Hotel as Landlord, in the exercise of its sole business judgment, shall determine to best promote the interest of the Casino/Hotel.

**EXHIBIT C**

11.2    This Agreement shall be binding on, and shall inure to the benefit of, the parties to it and their respective heirs, legal representatives, successors, and assigns; provided, however, that Purchaser may not assign any of its rights under this Agreement.

## ARTICLE TWELVE: NOTICES

All notices required to be given hereunder shall be in writing and shall be conveyed by (i) personal delivery (including by any messenger, courier service or facsimile) or (ii) the United States Postal Service by certified or registered mail, postage prepaid, with return receipt requested, as follows:

To Seller:

Kishore Kripalani
c/o Gaylord Restaurant
900 North Point, Suite D301
San Francisco, CA 94109
facsimile - 415-771-4980

To Purchaser:

Satpal S. Kohli
289 S. Robertson Blvd., Suite 502
Beverly Hills, CA 90211
facsimile – 818-901-8621

Any party may change its address or facsimile number for purposes of this paragraph by giving the other parties written notice of the new address in the manner set forth above.

## ARTICLE THIRTEEN: GOVERNING LAW

13.1    This Agreement shall be construed in accordance with, and governed by, the laws of the State of Nevada as applied to contracts that are executed and performed entirely in Nevada.

## ARTICLE FOURTEEN: FRANCHISE FEE

14.1    Upon the Closing as set forth herein, the Company shall pay to Seller a franchise fee in the amount of Two Percent (2%) of the gross revenue received from the operation of the Restaurant and any other revenue received under the Gaylord name (the "**Restaurant Franchise Fee**"), to be paid to Seller on a quarterly basis.

14.2    In the event that another full service Indian cuisine restaurant with the name "Gaylord" is opened and operated by the Company within the state of Nevada, then the Company shall pay to Seller a franchise fee in the amount of Two Percent (2%) of the gross revenue received from the operation of such additional restaurant (the "**Additional Franchise Fee**"), to be paid to Seller on a quarterly basis.

9

# EXHIBIT D

either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested. Any notice to be given hereunder by the Company shall be given by the Managing Member. A notice must be addressed to a Member or Interest Holder at the Member or Interest Holder's last known address on the records of the Company. A notice to the Company must be addressed to the Company's principal office. A notice delivered personally will be deemed given only when acknowledged in writing by the Person to whom it is delivered. A notice that is sent by Mail will be deemed given three (3) business days after it is mailed. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees.

12.3    *Specific Performance.*  The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

12.4    *Complete Agreement.*  This Agreement and any contribution or subscription agreement entered into in connection herewith constitute the complete and exclusive statement of the agreement among the Members, and supersede all prior and contemporaneous written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended nor any provision hereof waived without the written consent of a Majority in Interest of Members holding more than 50% of the outstanding Units.

12.5    *Applicable Law.*  All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of Nevada.

12.6    *Article and Section Titles.*  The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

12.7    *Binding Provisions.*  This Agreement is binding upon, and to the limited extent specifically provided herein, inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors, and assigns.

12.8    *Jurisdiction and Venue.*  Any suit involving any dispute or matter arising under this Agreement may only be brought in the appropriate Court in the State of Nevada having jurisdiction over the subject matter of the dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

12.9    *Terms.*  Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular, and plural, as the identity of the Person may in the context require.

12.10    *Separability of Provisions.*   Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

-21-

## CERTIFICATE OF SERVICE

    I, Gregory F. Buhyoff, hereby certify that the foregoing document was served upon Attorney David E. Lovejoy by e-mailing the same to davidlovejoy@sbcglobal.net. Sunday, July 12, 2007.

                           /S/Gregory F. Buhyoff

                             Gregory F. Buhyoff